IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

WASHINGTON LAMONT JONES, et al.                                PLAINTIFFS

v.                          CASE NO.: 4:06cv00944 BSM

FORREST CITY GROCERY INC., et al.                              DEFENDANTS

ORDER

Pending before this court is Defendants' Motion for Summary Judgment on the Claims of Washington Lamont Jones and Michael Ward [Doc. # 179] and Plaintiffs' response [Doc. # 236]. This is the third of fourteen pending motions for summary judgment in this case. For the reasons stated below, the motion should be granted.

*I. BACKGROUND*

Defendant Forrest City Grocery (FCG) is a grocery wholesaler located in Forrest City, Arkansas, that delivers bulk goods to retailers in Arkansas, Mississippi, Tennessee, and Missouri. FCG is owned and operated by defendants Allen and David Cohn. Tony Cummings is FCG's warehouse manager. FCG employs roughly 200 employees, of which 148 are African-American. FCG's workforce includes thirteen supervisor of which seven are African-American.

FCG makes up to thirty delivery runs a day. [Declarations of Tony Cummings ¶ 2] A majority of the runs are considered local deliveries or same day runs. [Cummings ¶ 2] Several of FCG's customers are located in the Memphis, Tennessee area. [Cummings ¶ 2] The Memphis deliveries are to stores in urban areas. [Cummings ¶ 6] On average, FCG trucks make four to six runs per day to the Memphis area. [Cummings ¶ 2] The Memphis deliveries are considered same day runs. [Cummings ¶ 2]

FCG uses a fleet of trucks that are of various ages and conditions to make its deliveries. [Cummings ¶ 3] Newer vehicles are used for long runs such as overnight runs. [Cummings ¶ 3] The older vehicles are used on short runs. [Cummings ¶ 3] The runs to Memphis are considered short runs. [Cummings ¶ 3] FCG employs fifty drivers, with thirty-eight of the drivers being African-American. [Cummings ¶ 5] Drivers are responsible for all deliveries and shortages. [Cummings ¶ 9] FCG also employs several helpers to assist the drivers in loading and unloading deliveries. [Cummings ¶ 9] Helpers are not used on all runs and are assigned based on the volume of the run. [Cummings ¶ 4] Because the Memphis deliveries are high volume runs, most of the helpers are assigned to Memphis runs. [Cummings ¶ 4] The majority of the applicants for the helper positions are African-American and as of May 6, 2008, all of the helpers were African-American. [Cummings ¶ 5]

Robberies are an occupational hazard for FCG's drivers. [Cummings ¶ 6] Despite this hazard, FCG holds its drivers strictly accountable for the inventory loaded on the trucks. [Cummings ¶ 8] Drivers are required to repay inventory shortages and any driver refusing to reimburse FCG is subject to termination. [Cummings ¶ 8]

On August 8, 2006, nine former FCG employees filed suit pursuant to 42 U.S.C. § 1981, alleging that FCG and its agents engaged in racially hostile practices and procedures, subjected African-American employees to a racially hostile work environment, and engaged in racially biased hiring procedures. They also sought class action certification pursuant to Rule 23 of the Federal Rules of Civil Procedure. The nine original plaintiffs are: Patrick Spearman, Kip Rucker, Will Green, Sidney Parchman, Charles Rogers, Washington Lamont Jones, William Ware, Michael Ward, and Lamar Cole. Through a series of amended complaints, sixteen additional plaintiffs were added:

Eric George, Brandon Barrett, Eric Brandon, Lester Brooks, Cara Lattimore, Gregory Moore, Isuoma Shine, Lee Dillard, Jason Boyd, Vanessa Isom, Jimmie Kidd, Robert Glasper, Eric Foster, Tommy Howard, Patrick Stevenson, and Clyde Givans.  The Plaintiffs are all African-American.  In a June 12, 2007 order, it was found that the Plaintiffs were not entitled to class certification.  On May 21, 2008, upon Defendants' motion, Plaintiffs Clyde Givans and Gregory Moore were dismissed.

## II.  STANDARD FOR SUMMARY JUDGMENT

When considering motions for summary judgment, this court views the evidence in a light most favorable to the nonmoving party and gives that party the benefit of all inferences that might reasonably be drawn.  *See Buboltz v. Residential Advantages, Inc.*, 523 F.3d 864, *868 (8th Cir. 2008).  Federal Rule of Civil Procedure 56(c) provides that summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.  *See Carrington v. City of Des Moines, Iowa*, 481 F.3d 1046, *1050 (8th Cir. 2007).  To be a genuine issue of fact, the evidence must be such that a reasonable jury could return a verdict for the nonmoving party.  *Depositors Ins. Co. v. Wal-Mart Stores, Inc.*, 506 F.3d 1092, *1094 (8th Cir. 2007).  To be a material fact, the factual issue must potentially affect the outcome of the suit under the governing law.  *Id*.

The burden on the party moving for summary judgment is only to demonstrate to the District Court that the record does not disclose a genuine dispute on a material fact.  *City of Mt. Pleasant, Iowa v. Associated Elec. Coop., Inc.*, 838 F.2d 268, *273 (8th Cir. 1988) (discussing *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548 (1986)).  It is enough for the movant to bring up the fact that the record does not contain such an issue and to identify that part of the record which bears out the

movant's assertion. *Id*. Once the movant has carried its burden under Rule 56(c), the nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, *587 (1986). In the language of the Rule, the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial. *Id*. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. *Id*.

### III. DISCUSSION

A.  Claims of Washington Lamont Jones

From April 6, 2001 to December 2002, Washington Lamont Jones worked as a helper at FCG. [undisputed facts ¶¶ 1 &3] Tony Cummings was his supervisor. [undisputed fact ¶ 3] During his employment with FCG, the truck Jones was working on was robbed twice. [Jones depo pp. 178] Following the first robbery, Jones was required to pay a portion of the shortage. [Jones depo p. 178] He quit after the second robbery. [Jones depo p. 176] He now claims that he was discriminated against by FCG in that he was wrongfully terminated, that FCG engaged in racially discriminatory patterns and practices,[1] that FCG engaged in racially discriminatory hiring practices and that he was subjected to a racially hostile work environment. [Fourth Amended Complaint Count I]

1.  Wrongful Termination

A plaintiff raising claims of race discrimination may survive a motion for summary judgment either by proof of "direct evidence" of discrimination, or by creating the requisite inference of unlawful discrimination through the burden-shifting framework described in *McDonnell-Douglas*

---

[1]The plaintiffs' pattern and practice claims were dismissed in a June 9, 2008 order that granted the defendants' partial motion for summary judgment.

*Corp. v. Green*, 411 U.S. 792, 802-04, 93 S.Ct. 1817 (1973). *E.E.O.C. v. Trans State Airlines, Inc.*, 462 F.3d 987, *991 (8th Cir. 2006); *see Fields v. Shelter Mut. Ins. Co.*, __ F.3d __, 2008 WL 763017 (8th Cir. 2008); *King v. Hardesty*, 517 F.3d 1049, *1057 (8th Cir. 2008). Direct evidence is evidence showing a specific link between the alleged discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated the adverse employment action. *Libel v. Adventure Lands of Am., Inc.*, 482 F.3d 1028, *1034 (8th Cir. 2007); *Twymon v. Wells Fargo & Co.*, 462 F.3d 925, *933 (8th Cir. 2006). Direct evidence does not include stray remarks in the workplace, statements by non-decision-makers, or statements by decision-makers unrelated to the decisional process itself. *Twymon*, 462 F.3d at *933; *King*, 517 F.3d at *1058.

Jones fails to proffer direct evidence of discrimination. He believes he was sent to Memphis because he is African-American and the deliveries were to African-American neighborhoods. [Jones depo p. 51] He also believes there was racial intent behind Tony Cummings's and Allen Cohn's questioning of him about his whereabouts during a robbery of his truck. [Jones depo p. 67] It is well-settled that a plaintiff's beliefs or feelings cannot create a triable issue of discrimination. *Harris v. Home Savings Ass'n*, 730 F.Supp. 298, *304 (W.D. Mo. 1989).

Jones also fails to establish any form of discriminatory animus. Jones once overheard Allen Cohn call a black supervisor "a nigger" while joking around with the supervisor. [Jones depo p. 78] He also overheard David Cohn say "The niggers and flies always into some shit." [Jones depo p. 208] Jones fails, however, to show how these remarks are related to the decisions that were made regarding his employment.

Because Jones is unable to proffer direct evidence of discrimination, his claim will be

5

examined under the burden-shifting framework of *McDonnell-Douglas*. The *McDonnell-Douglas* burden-shifting framework applies to claims of race discrimination under section 1981. *Gordon v. Shafer Contracting Co., Inc.*, 469 F.3d 1191, *1196 (8th Cir. 2006); *Harris v. Hays*, 452 F.3d 714, *717 (8th Cir. 2006). Under this framework, a plaintiff first must establish a prima facie case of discrimination; if a prima facie case is established, the burden of production shifts to the defendant to show a legitimate, nondiscriminatory reason for the challenged action; and if the defendant proffers such a reason, the burden shift back to the plaintiff to establish that the proffered reason is a mere pretext for discriminatory animus. *Harris*, 452 F.3d at *717-18. To establish a prima facie case of discriminatory discharge, Jones must show that: (1) he belongs to a protected class; (2) he was meeting FCG's legitimate job expectations; (3) he suffered an adverse employment action; and (4) similarly situated employees outside the protected class were treated differently. *Fields*, __ F.3d at __; *Shanklin v. Fitzgerald*, 397 F.3d 596, *602 (8th Cir. 2005).

Jones fails to proffer evidence establishing a prima facie case of discrimination. First, as Defendants point out, Jones quit his job with FCG. [Jones depo p. 176] Therefore, he did not suffer an adverse employment action. An adverse employment action is a tangible change in working conditions that produces a material employment disadvantage. *Brannum v. MO Dep't of Corrections*, 518 F.3d 542, *549 (8th Cir. 2008); *Clegg v. Ark. Dep't of Correction*, 496 F.3d 922, *926 (8th Cir. 2007). This might include termination, cuts in pay or benefits, and changes that affect an employee's future career prospects, as well as circumstances amounting to a constructive discharge. *Brannum*, 518 F.3d at *549; *Clegg*, 496 F.3d at *926.

Second, Jones cannot show that similarly situated employees outside the protected class were treated differently. To establish that a similarly-situated employee received more favorable

treatment, the evidence must show that the similarly-situated employee dealt with the same supervisor, was subject to the same standards, and engaged in the same conduct without any mitigating or distinguishing circumstances. *E.E.O.C. v. Trans-State Airlines*, 462 F.3d at *993; *Green v. Franklin Nat'l Bank of Minneapolis*, 459 F.3d 903, *913 (8th Cir. 2006). Jones does not know if FCG withheld money from white employees when they were robbed. [undisputed facts ¶ 20] Without any evidence as to the treatment received by any white employee following a robbery, Jones fails to establish that similarly situated employees outside the protected class were treated differently.

Jones has failed to produce direct evidence of discrimination. He also has failed to establish a prima facie case of discrimination under *McDonnell-Douglas,* in that he did not suffer an adverse employment decision and he cannot show that similarly situated employees outside the protected class were treated differently. Therefore, a reasonable jury would rule in his favor. For these reasons, the court finds that there are no genuine issues of material fact in dispute and that Defendants are entitled to summary judgment on Jones's wrongful termination claim.

    2. <u>Failure to Promote</u>

To establish a prima facie case of racial discrimination in a failure to promote claim, a plaintiff must show: (1) he is a member of a protected group; (2) he was qualified and applied for a promotion to an available position; (3) he was rejected; and (4) similarly situated employees, not part of the protected group were promoted instead. *Allen v. Tobacco Superstore, Inc.*, 475 F.3d 931, *937 (8th Cir. 2007); *Pope v. ESA Servs., Inc.*, 406 F.3d 1001, *1007 (8th Cir. 2005). To establish a prima facie failure to promote claim, a plaintiff ordinarily must show he or she applied for the promotion and was rejected or that he or she made every reasonable attempt to convey his or her interest in the job to the employer. *McClure v. Career Sys. Dev. Corp.*, 447 F.3d 1133, *1135 (8th

7

Cir. 2006); *Allen*, 475 F.3d at *937.  If a prima facie case is established, the burden of production shifts to the employer, who must rebut the presumption of discrimination with evidence that the plaintiff was rejected, or someone else was preferred, for a legitimate, nondiscriminatory reason. *Allen*, 475 F.3d at *937.  A plaintiff may nonetheless prevail by presenting credible evidence the employer's stated reasons are pretextual. *Id.*

Jones takes issue with the fact that there are no African-Americans working in FCG's office. Jones admits, however, that when he applied for his job at FCG, he did not know whether a position was available in FCG's office. [undisputed facts ¶ 22; Jones depo p. 202]  Jones also has failed to present any evidence showing that, while employed at FCG, he applied for a position in its office or that he made his desire for a position in the office known.  Therefore, he cannot maintain his failure to promote/hire claim and Defendants are entitled to summary judgment.

   3. <u>Hostile Work Environment</u>

A hostile environment exists when the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment. *Gordon v. Shafer Contracting Co., Inc.*, 469 F.3d 1191, *1194 (8th Cir. 2006).  To establish a prima facie hostile work environment claim, a plaintiff must prove: (1) that he is a member of a protected group; (2) the occurrence of unwelcome harassment; (3) a causal nexus between the harassment and his membership in the protected group; (4) that the harassment affected a term, condition, or privilege of employment; and (5) that the employer knew or should have known of the harassment and failed to take prompt and effective remedial action. *Anda v. Wickes Furniture Co., Inc.*, 517 F.3d 526, *531-32 (8th Cir. 2008); *Green*, 459 F.3d at *910; *Turner v. Gonzales*, 421 F.3d 688, *695 (8th Cir.

2005). The underlying wrongful conduct must be sufficient to create a hostile environment, both as it would be viewed objectively by a reasonable person and as it was actually viewed subjectively by the victim. *Green*, 459 F.3d at *911; *Turner*, 421 F.3d at *695. A working environment dominated by racial slurs constitutes a hostile work environment. *See Green*, 459 F.3d at *911. If the comments are sporadic or casual, they are unlikely to establish a hostile work environment claim. *Id*. Frequency of harassment is a factor, but even infrequent conduct can be severe enough to be actionable. *Id*.

Jones once overheard Allen Cohn call a black supervisor "a nigger" while joking around with the supervisor. [Jones depo p. 78] He also overheard David Cohn say "The niggers and flies always into some shit." [Jones depo p. 208] The use of the word "nigger" even in jest can be evidence of racial antipathy. *Delph v. Dr. Pepper Bottling Co. of Paragould, Inc.*, 130 F.3d 349, *356 (8th Cir. 1997). However, based on the record before this court, the court finds that these statements are not sufficient to show that Jones's work environment was hostile and therefore, Defendants are entitled to summary judgment on Jones's hostile environment claim.

    4. <u>Individual Immunity under 42 U.S. C. § 1981</u>

There are no Eighth Circuit Court of Appeal decisions addressing individual liability on claims under section 1981. *See Habben v. City of Fort Dodge*, 472 F.Supp.2d 1142, *1155 (N.D. Iowa 2007); *Payne v. Peter Kiewit Sons', Inc.*, No. 8:06CV686 (D. Neb. Apr. 5, 2007) (order). An individual may be held liable under section 1981, regardless of whether that individual's employer is subject to liability. *Brooks v. Linn Mar Cmty. Sch. Dist.*, No. C95-0395 (N.D. Iowa July 1, 1997). If individuals are personally involved in the discrimination against a plaintiff, and if they intentionally caused an employer to infringe on a plaintiff's section 1981 rights, or if they authorized,

directed, or participated in the alleged discriminatory conduct, they may be held liable. *Id*.

Defendants argue that Defendants Allen and David Cohn cannot be held individually liable under 42 U.S.C. §1981. Jones states that, aside from cursing him out following a robbery or shortage, Allen Cohn did not speak to him. [Jones depo pp. 71, 90] He states that David Cohn would speak to him. [Jones depo p. 71]

Jones has failed to put forth any evidence showing that Allen and David Cohn personally discriminated against him. In the absence of evidence showing that the Cohns discriminated against him, Jones cannot establish liability against them under section 1981 and Defendants are entitled to summary judgment.

B.   Claims of Michael Ward

Michael Ward worked as a helper at FCG from November 2001 to April 22, 2003. [undisputed facts ¶¶ 1, 3, & 4] Tony Cummings was his supervisor. [Ward 8/13/2007 depo p. 12] During his employment with FCG, Ward's truck was robbed four times. [undisputed facts ¶ 18; Ward 8/13/07 depo p. 39] On April 23, 2003, the day after Ward's fourth robbery, he was placed on administrative leave pending completion of the police investigation. [undisputed facts ¶ 23] Ward filed for unemployment benefits on May 5, 2003. [undisputed facts ¶ 23] He informed the unemployment office that, although he was never discharged from FCG, he considered himself fired, since FCG had yet to contact him.[undisputed facts ¶ 23] Ward now claims that FCG engaged in racially discriminatory patterns and practices[2], that he was discriminated against when he was wrongfully discharged, that FCG engages in racially discriminatory hiring procedures, and that he

---

[2]The plaintiffs' patterns and practices claims were dismissed in a June 9, 2008 order that granted defendants' partial motion for summary judgment.

was subjected to a racially hostile work environment. [Fourth Amended Complaint Count VI]

    1. <u>Wrongful Discharge</u>

A plaintiff raising claims of race discrimination may survive a motion for summary judgment either by proof of "direct evidence" of discrimination, or by creating the requisite inference of unlawful discrimination through the burden-shifting framework described in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04, 93 S.Ct. 1817 (1973). *E.E.O.C. v. Trans State Airlines, Inc.*, 462 F.3d 987, *991 (8th Cir. 2006); *see Fields v. Shelter Mut. Ins. Co.*, __ F.3d __, 2008 WL 763017 (8th Cir. 2008); *King v. Hardesty*, 517 F.3d 1049, *1057 (8th Cir. 2008). Direct evidence is evidence showing a specific link between the alleged discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated the adverse employment action. *Libel v. Adventure Lands of Am., Inc.*, 482 F.3d 1028, *1034 (8th Cir. 2007); *Twymon v. Wells Fargo & Co.*, 462 F.3d 925, *933 (8th Cir. 2006). Direct evidence does not include stray remarks in the workplace, statements by non-decision-makers, or statements by decision-makers unrelated to the decisional process itself. *Twymon*, 462 F.3d at *933; *King*, 517 F.3d at *1058.

Ward believes that FCG discriminated against him because it would not send whites to Memphis and the decision to send him to Memphis was because of his race. [undisputed facts ¶¶ 7 &11; Ward 8/13/07 depo p. 21] He also testified that black helpers were assigned to inferior trucks that were in his words, "raggedy." [undisputed facts ¶ 9; Ward 8/13/07 depo p. 19] It is well-settled, that a plaintiff's beliefs or feelings cannot create a triable issue of discrimination. *Harris v. Home Savings Ass'n*, 730 F.Supp. 298, *304 (W.D. Mo. 1989). Furthermore, Ward acknowledges that three white drivers drove deliveries to Memphis. [undisputed facts ¶12] He is unfamiliar with how

FCG assigns its trucks. [undisputed facts ¶ 14].

Ward has failed to present any evidence suggesting that racial animus was the true motivating factor behind FCG's decisions. After viewing the evidence in a light most favorable to Ward, the court finds that he fails to proffer direct evidence of discrimination.

In the absence of direct evidence, Ward's claim is analyzed under the *McDonnell-Douglas* burden-shifting framework. The *McDonnell-Douglas* burden-shifting framework applies to claims of race discrimination under section 1981. *Gordon v. Shafer Contracting Co., Inc.*, 469 F.3d 1191, *1196 (8th Cir. 2006); *Harris v. Hays*, 452 F.3d 714, *717 (8th Cir. 2006). Under this framework, a plaintiff first must establish a prima facie case of discrimination; if a prima facie case is established, the burden of production shifts to the defendant to show a legitimate, nondiscriminatory reason for the challenged action; and if the defendant proffers such a reason, the burden shift back to the plaintiff to establish that the proffered reason is a mere pretext for discriminatory animus. *Harris*, 452 F.3d at *717-18. To establish a prima facie case of discriminatory discharge, Jones must show that: (1) he belongs to a protected class; (2) he was meeting FCG's legitimate job expectations; (3) he suffered an adverse employment action; and (4) similarly situated employees outside the protected class were treated differently. *Fields*, __ F.3d at __; *Shanklin v. Fitzgerald*, 397 F.3d 596, *602 (8th Cir. 2005).

Defendants allege that Ward's claim fails because he did not suffer an adverse employment action. An adverse employment action is a tangible change in working conditions that produces a material employment disadvantage. *Brannum v. MO Dep't of Corrections*, 518 F.3d 542, *549 (8th Cir. 2008); *Clegg v. Ark. Dep't of Correction*, 496 F.3d 922, *926 (8th Cir. 2007). This might include termination, cuts in pay or benefits, and changes that affect an employee's future career

prospects, as well as circumstances amounting to a constructive discharge. *Brannum*, 518 F.3d at *549; *Clegg*, 496 F.3d at *926.

Ward claims that he was constructively discharged. [Fourth Amended Complaint Count VI] A constructive discharge occurs when an employer deliberately renders the employee's working conditions intolerable, thereby forcing the employee to quit. *Brenneman v. Famous Dave's of Am., Inc.*, 507 F.3d 1139, *1144 (8th Cir. 2007); *Devin v. Schwan's Home Serv., Inc.*, 491 F.3d 778, *789 (8th Cir. 2007); *Davis v. KARK-TV, Inc.*, 421 F.3d 699, *706 (8th Cir. 2005). To prove constructive discharge, a plaintiff must demonstrate that: (1) a reasonable person in the plaintiff's situation would find the working conditions intolerable and (2) the employer intended to force the plaintiff to quit. *Brenneman*, 507 F.3d at *1144; *Devin*, 491 F.3d at *789. If the plaintiff cannot show that the employer intended to force the plaintiff to quit, the plaintiff can still prevail if the employer could have reasonably foreseen that the employee would quit as a result of its action. *Brenneman*, 507 F.3d at *1144. To be reasonable, an employee must give the employer a reasonable opportunity to correct the problem. *Campos v. City of Blue Springs, MO*, 289 F.3d 546, *550-51 (8th Cir. 2002). In other words, a plaintiff must take affirmative steps short of resigning that a reasonable employee would take to make the conditions of employment more tolerable. *Id*.

Ward has failed to show that his working conditions were intolerable and therefore cannot prove constructive discharge. Despite Ward's failure to show constructive discharge, the court finds that he suffered an adverse employment action when he was placed on administrative leave.

Defendants also allege that Ward's claim fails because he cannot meet his burden of showing that similarly situated employees outside the protected class were treated differently. To establish that a similarly-situated employee received more favorable treatment, the evidence must show that

the similarly-situated employee dealt with the same supervisor, was subject to the same standards, and engaged in the same conduct without any mitigating or distinguishing circumstances. *E.E.O.C. v. Trans-State Airlines*, 462 F.3d at *993; *Green v. Franklin Nat'l Bank of Minneapolis*, 459 F.3d 903, *913 (8th Cir. 2006).

Ward states that white drivers who were robbed were never fired. [Ward 3/18/08 depo p. 16] He fails, however, to identify who these white drivers are. He states that Roy Fowler, who is black, is the only person he knows that was robbed more than four times and still kept his job. [Ward 8/13/07 depo p. 40] Ward admits that, unlike Plaintiff Jones, he never had any money withheld from his check. [Ward 8/13/08 depo p. 45] Because Ward fails to identify any white employees who were terminated following a robbery, he cannot establish a prima facie case of discrimination.

Ward fails to proffer either direct evidence or prima facie evidence of discrimination. The court finds that there are no genuine issues of fact in dispute and that the Defendants are entitled to summary judgment on Ward's wrongful termination claim.

    2. <u>Failure to Promote</u>

To establish a prima facie case of racial discrimination in a failure to promote claim, a plaintiff must show: (1) he is a member of a protected group; (2) he was qualified and applied for a promotion to an available position; (3) he was rejected; and (4) similarly situated employees, not part of the protected group were promoted instead. *Allen v. Tobacco Superstore, Inc.*, 475 F.3d 931, *937 (8th Cir. 2007); *Pope v. ESA Servs., Inc.*, 406 F.3d 1001, *1007 (8th Cir. 2005). To establish a prima facie failure to promote claim, a plaintiff ordinarily must show he or she applied for the promotion and was rejected or that he or she made every reasonable attempt to convey his or her interest in the job to the employer. *McClure v. Career Sys. Dev. Corp.*, 447 F.3d 1133, *1135 (8th

Cir. 2006); *Allen*, 475 F.3d at *937. If a prima facie case is established, the burden of production shifts to the employer, who must rebut the presumption of discrimination with evidence that the plaintiff was rejected, or someone else was preferred, for a legitimate, nondiscriminatory reason. *Allen*, 475 F.3d at *937. A plaintiff may nonetheless prevail by presenting credible evidence the employer's stated reasons are pretextual. *Id.*

Ward is a high school graduate and following high school, he attended one semester at East Arkansas Community College. [Ward 8/13/07 depo p. 9] Prior to working at FCG, he worked at Wal-Mart as an associate. [Ward 8/13/07 depo p. 9] While working at FCG, he was never aware of any vacancies in the office. [Ward 8/13/08 depo p. 68]

After view this evidence in a light most favorable to Ward, the court finds that he fails to proffer evidence showing that he applied for and was qualified for a promotion, that he was rejected for the position, and that a similarly situated employee outside the protected class obtained the position. He, therefore, is unable to maintain his failure to promote claim and Defendants are entitled to summary judgment.

    3.    <u>Hostile Work Environment</u>

A hostile environment exists when the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment. *Gordon v. Shafer Contracting Co., Inc.*, 469 F.3d 1191, *1194 (8th Cir. 2006). To establish a prima facie hostile work environment claim, a plaintiff must prove: (1) that he is a member of a protected group; (2) the occurrence of unwelcome harassment; (3) a causal nexus between the harassment and his membership in the protected group; (4) that the harassment affected a term, condition, or privilege

of employment; and (5) that the employer knew or should have known of the harassment and failed to take prompt and effective remedial action. *Anda v. Wickes Furniture Co., Inc.*, 517 F.3d 526, *531-32 (8th Cir. 2008); *Green*, 459 F.3d at *910; *Turner v. Gonzales*, 421 F.3d 688, *695 (8th Cir. 2005). The underlying wrongful conduct must be sufficient to create a hostile environment, both as it would be viewed objectively by a reasonable person and as it was actually viewed subjectively by the victim. *Green*, 459 F.3d at *911; *Turner*, 421 F.3d at *695. A working environment dominated by racial slurs constitutes a hostile work environment. *See Green*, 459 F.3d at *911. If the comments are sporadic or casual, they are unlikely to establish a hostile work environment claim. *Id*. Frequency of harassment is a factor, but even infrequent conduct can be severe enough to be actionable. *Id*.

Ward cannot maintain a claim of hostile environment. Although, he once heard Allen Cohn call an employee name "Roy" a "stupid motherfucker," he admits that he never heard a racial slur while employed at FCG. [undisputed fact ¶ 15; Ward 8/13/07 depo p. 28] In light of this evidence, the court finds that a reasonable jury would not find that Ward's work environment was permeated by discriminatory intimidation, ridicule, and insults. There are no genuine issues of material fact and Defendants are entitled to summary judgment on Ward's hostile environment claim.

    4. Individual Immunity under 42 U.S. C. § 1981

There are no Eighth Circuit Court of Appeal decisions addressing individual liability on claims under section 1981. *See Habben v. City of Fort Dodge*, 472 F.Supp.2d 1142, *1155 (N.D. Iowa 2007); *Payne v. Peter Kiewit Sons', Inc.*, No. 8:06CV686 (D. Neb. Apr. 5, 2007) (order). An individual may be held liable under section 1981, regardless of whether that individual's employer is subject to liability. *Brooks v. Linn Mar Cmty. Sch. Dist.*, No. C95-0395 (N.D. Iowa July 1, 1997).

If individuals are personally involved in the discrimination against a plaintiff, and if they intentionally caused an employer to infringe on a plaintiff's section 1981 rights, or if they authorized, directed, or participated in the alleged discriminatory conduct, they may be held liable. *Id*.

Defendants argue that Defendants Allen and David Cohn cannot be held individually liable under 42 U.S.C. §1981. Ward states that Allen and David Cohn never spoke to him. [Ward 8/13/08 depo pp. 17-18] This testimony is insufficient to suggest that the Cohns personally discriminated against Ward. Therefore, the Cohns cannot be held individually liable under section 1981 and Defendants are entitled to summary judgment.

## *IV. CONCLUSION*

After viewing the evidence in a light most favorable to plaintiffs Jones and Ward, there are no genuine issues of fact and the Defendants are entitled to summary judgment as a matter of law. Accordingly, the motion for summary judgment is granted and the claims of Jones and Ward are dismissed with prejudice.

IT IS SO ORDERED this 19th day of June, 2008.

                                                       UNITED STATES DISTRICT JUDGE