IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

WASHINGTON LAMONT JONES, et al.                          PLAINTIFFS

v.                        CASE NO.: 4:06cv00944 BSM

FORREST CITY GROCERY INC., et al.                        DEFENDANTS


<u>ORDER</u>

Pending before this court is Defendants' Motion for Summary Judgment on the Claims of

Patrick Steverson [Doc. # 202] and Plaintiffs' response [Doc. # 266]. This is the seventh of fourteen

pending motions for summary judgment in this case. For the reasons stated below, the motion

should be granted in part and denied in part.

*I. BACKGROUND*

Defendant Forrest City Grocery (FCG) is a grocery wholesaler located in Forrest City,

Arkansas, that delivers bulk goods to retailers in Arkansas, Mississippi, Tennessee, and Missouri.

FCG is owned and operated by Allen and David Cohn. FCG employs roughly 200 employees, of

which 148 are African-American. FCG's workforce includes thirteen supervisor of which seven are

African-American.

On August 8, 2006, nine former FCG employees filed suit pursuant to 42 U.S.C. § 1981,

alleging that FCG and its agents engaged in racially hostile practices and procedures, subjected

African-American employees to a racially hostile work environment, and engaged in racially biased

hiring procedures. They also sought class action certification pursuant to Rule 23 of the Federal

Rules of Civil Procedure. The nine original plaintiffs are: Patrick Spearman, Kip Rucker, Will

Green, Sidney Parchman, Charles Rogers, Washington Lamont Jones, William Ware, Michael Ward,

and Lamar Cole.  Through a series of amended complaints, sixteen additional plaintiffs were added: Eric George, Brandon Barrett, Eric Brandon, Lester Brooks, Cara Lattimore, Gregory Moore, Isuoma Shine, Lee Dillard, Jason Boyd, Vanessa Isom, Jimmie Kidd, Robert Glasper, Eric Foster, Tommy Howard, Patrick Stevenson, and Clyde Givans.  The Plaintiffs are all African-American.  In a June 12, 2007 order, it was found that the Plaintiffs were not entitled to class certification.  On May 21, 2008, upon Defendants' motion, Plaintiffs Clyde Givans and Gregory Moore were dismissed.

Defendants have now moved for summary judgment on the claims of Plaintiff Patrick Steverson.  Steverson was hired as a stocker on February 3, 2006. [undisputed facts ¶ 1; Steverson affidavit ¶1; contested facts ¶1] When he was hired, Tony Cummings explained FCG's rules and Steverson signed a list of rules for the day shift. [undisputed facts ¶ 3] The rules included the following: (1) work must be done right and complete; (2) the pull down sheet must be checked; and (3) insubordination was prohibited. [undisputed facts ¶ 3] Steverson also signed FCG's policy stating that cursing a fellow employee would result in immediate termination. [undisputed facts ¶ 3] Under FCG's disciplinary policy, an employee receives a first written warning after their second verbal warning.  [undisputed facts ¶ 6]

Steverson received a second written warning for poor job performance on June 16, 2006. [undisputed facts ¶ 6]  He received a final warning notice for poor job performance on June 23, 2006, after he failed to finish cleaning a cooler. [undisputed facts ¶ 7] In October 2006, Steverson was transporting merchandise with a reach-lift, when he happened upon three coworkers, including Patricia Dance, standing in the middle of his path. [undisputed facts ¶ 9] Dance is white. [undisputed facts ¶ 9] As Steverson attempted to maneuver around the group, Dance screamed that Steverson had run over her foot. [undisputed facts ¶ 9; depo p. 31] Dance started cursing Steverson

2

and calling him a "black mother-fucker" and "black bastard." [depo p. 32]. Dance reported the incident to Steverson's immediate supervisor, John Wayne Rice, who also happens to be white. [depo pp. 5 & 32]. When Steverson told Rice he did not think that he had hit Dance, Rice yelled at him to "shut the fuck up." [depo p. 32] As a result, Steverson received a second final warning and three days suspension. [undisputed facts ¶ 9] The incident report cites Steverson's "smart and offensive" responses as additional grounds for his suspension. [undisputed facts ¶ 10]  When Steverson spoke to Allen Cohn about the incident, Cohn reviewed a tape of the incident and stated that it did not look like Steverson tried to hit Dance but that he was to go ahead and take the three day suspension. [depo p. 37]

Steverson was warned again about his poor work performance on November 16, 2006, when he failed to check his pull down sheet. [undisputed facts ¶ 12] On January 2, 2007, Steverson received his third post-final warning when he questioned Rice after Rice ordered him to put up some groceries when two white-female coworkers failed to complete the task as ordered. [undisputed facts ¶ 13]  That same day, Rice terminated Steverson. [depo p. 51] Rice told Steverson that he was terminated because of his attitude. [depo p. 109]

Steverson claims that his termination was racially motivated and that he was subjected to a racially hostile environment.  He also raises a practices and procedures claim.[1] Defendants have moved for summary judgment on all of Steverson's claims and asserts that defendants Allen and David Cohn should not be held individually liable under 42 U.S.C. § 1981.

---

[1]Defendants filed a separate motion for summary judgment on the pattern and practice claims.  On June 9, 2008, an order was entered granting the motion.

## II.  STANDARD FOR SUMMARY JUDGMENT

When considering motions for summary judgment, this court views the evidence in a light most favorable to the nonmoving party and gives that party the benefit of all inferences that might reasonably be drawn.  *See Buboltz v. Residential Advantages, Inc.*, 523 F.3d 864, *868 (8th Cir. 2008).  Federal Rule of Civil Procedure 56(c) provides that summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.  *See Carrington v. City of Des Moines, Iowa*, 481 F.3d 1046, *1050 (8th Cir. 2007).  To be a genuine issue of fact, the evidence must be such that a reasonable jury could return a verdict for the nonmoving party.  *Depositors Ins. Co. v. Wal-Mart Stores, Inc.*, 506 F.3d 1092, *1094 (8th Cir. 2007).  To be a material fact, the factual issue must potentially affect the outcome of the suit under the governing law.  *Id.*

The burden on the party moving for summary judgment is merely to demonstrate to the District Court that the record does not disclose a genuine dispute as to any material fact.  *City of Mt. Pleasant, Iowa v. Associated Elec. Coop., Inc.*, 838 F.2d 268, *273 (8th Cir. 1988) (discussing *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548 (1986)).  It is enough for the movant to bring up the fact that the record does not contain such an issue and to identify that part of the record which bears out the movant's assertion.  *Id.*  Once the movant has carried its burden under Rule 56(c), the nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts.  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, *587 (1986).  In the language of the Rule, the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial.  *Id.*  Where the record taken as a whole could not lead a rational trier

4

of fact to find for the nonmoving party, there is no genuine issue for trial.  *Id.*

*III.  DISCUSSION*

In support of their motion for summary judgment, Defendants submit Steverson's October 4, 2007 deposition testimony, and Declarations from Tony Cummings.[2]  In opposition to the motion for summary judgment Steverson submits his affidavit testimony, a portion of his October 4, 2007 deposition testimony, and affidavits from Donny Pierson and Dameon Jones.

A.      Wrongful Termination Claim

A plaintiff raising claims of race discrimination may survive a motion for summary judgment either by proof of "direct evidence" of discrimination, or by creating the requisite inference of unlawful discrimination through the burden-shifting framework described in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04, 93 S.Ct. 1817 (1973).  *E.E.O.C. v. Trans State Airlines, Inc.*, 462 F.3d 987, *991 (8th Cir. 2006); *see Fields v. Shelter Mut. Ins. Co.*, __ F.3d __, 2008 WL 763017 (8th Cir. 2008); *King v. Hardesty*, 517 F.3d 1049, *1057 (8th Cir. 2008).  Direct evidence is evidence showing a specific link between the alleged discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated the adverse employment action.  *Libel v. Adventure Lands of Am., Inc.*, 482 F.3d 1028, *1034 (8th Cir. 2007); *Twymon v. Wells Fargo & Co.*, 462 F.3d 925, *933 (8th Cir. 2006).  Direct evidence does not include stray remarks in the workplace, statements by non-decision-makers, or statements by decision-makers unrelated to the decisional process itself.  *Twymon*, 462 F.3d at *933; *King*, 517 F.3d at *1058.

---

[2]The Defendants also submit their deliver route sheets and the employee history for Patrick Spearman; however, these items are not relevant as to the present motion.

Steverson was terminated for insubordination.  However, he believes that he was terminated because Rice did not like his attitude and the fact that he challenged Rice's authority in front of the other employees. [undisputed fact ¶ 14]  It is well-settled, that a plaintiff's beliefs or feelings cannot create a triable issue of discrimination.  *Harris v. Home Savings Ass'n*, 730 F.Supp. 298, *304 (W.D. Mo. 1989).  Furthermore, Steverson, fails to produce any direct evidence of discrimination.  Indeed, merely asserting that one was fired because he challenged his supervisor's authority or because his supervisor disliked his attitude, does not show discrimination.

In the absence of direct evidence of discrimination, Steverson's claim will be examined under the burden-shifting framework of *McDonnell-Douglas*.  The *McDonnell-Douglas* burden-shifting framework applies to claims of race discrimination under section 1981.  *Gordon v. Shafer Contracting Co., Inc*., 469 F.3d 1191, *1196 (8th Cir. 2006); *Harris v. Hays*, 452 F.3d 714, *717 (8th Cir. 2006).   Under this framework, a plaintiff first must establish a prima facie case of discrimination; if a prima facie case is established, the burden of production shifts to the defendant to show a legitimate, nondiscriminatory reason for the challenged action; and if the defendant proffers such a reason, the burden shift back to the plaintiff to establish that the proffered reason is a mere pretext for discriminatory animus.  *Harris*, 452 F.3d at *717-18.  To establish a prima facie case of discriminatory discharge, Steverson must show that: (1) he belongs to a protected class; (2) he was meeting FCG's legitimate job expectations; (3) he suffered an adverse employment action; and (4) similarly situated employees outside the protected class were treated differently.  *Fields*, _ _ F.3d at __; *Shanklin v. Fitzgerald*, 397 F.3d 596, *602 (8th Cir. 2005).

For purposes of summary judgment, Defendants do not dispute that Steverson is a member of a protected class, that he met the minimum objective qualification for the job, and that he suffered

6

an adverse employment action.  They allege that Steverson cannot met his burden of proving that similarly situated persons outside his protected class were treated differently and that he cannot prove that the reason for his termination is mere pretext for racial discrimination.  To establish that a similarly-situated employee received more favorable treatment, the evidence must show that the similarly-situated employee dealt with the same supervisor, was subject to the same standards, and engaged in the same conduct without any mitigating or distinguishing circumstances.  *E.E.O.C. v. Trans-State Airlines*, 462 F.3d at *993; *Green v. Franklin Nat'l Bank of Minneapolis*, 459 F.3d 903, *913 (8th Cir. 2006).

Steverson states that he witnessed two white coworkers, Angie and Marie, talk back to Rice. [depo p. 109] When this occurred, Rice took no action against them. [depo p. 109] When the court views this in a light most favorable to Steverson, a genuine issue of material fact is created as to whether similarly situated employees outside the protected class received different treatment.  In light of this question, the court will presume that Steverson makes a prima facie case of discrimination.  The burden now shifts to FCG to produce a nondiscriminatory reason for Steverson's termination.  To meet this burden, FCG points out that Steverson was terminated for insubordination.  This is a nondiscriminatory reason, so in order for Steverson to succeed on his wrongful termination claim, he must demonstrate that the reason for his termination is mere pretext for discrimination.

A plaintiff may make a sufficient showing of pretext by different means, including showing that an employer: (1) failed to follow its own policies; (2) treated similarly-situated employees in a disparate manner; and (3) made substantial changes over time in its proffered reason for an employment decision.  *Arnold v. Nursing & Rehab. Ctr. at Good Shepherd, LLC.*, 471 F.3d 843,

*847 (8th Cir. 2006).   Regardless of the method employed to prove pretext, a plaintiff must demonstrate that a discriminatory animus lies behind the defendants' neutral explanations.  *Id.*

The fact that there are two white females who talked back to Rice with no recourse suggest that similarly situated employees are treated in a disparate manner.  The court is also bothered by the fact that a white coworker was allowed to curse Steverson out with no recourse, which according to FCG's rules should have resulted in the employee's termination.  The existence of these two facts suggests to the court that racial animus may have been the real reason for Steverson's termination.  Accordingly, the court finds that a genuine issue of material fact exist and that the Defendants' motion for summary judgment on Steverson's wrongful termination claim should be denied.

B.   Hostile Work Environment Claim

A hostile environment exists when the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.  *Gordon v. Shafer Contracting Co., Inc.*, 469 F.3d 1191, *1194 (8th Cir. 2006).   To establish a prima facie hostile work environment claim, a plaintiff must prove: (1) that he is a member of a protected group; (2) the occurrence of unwelcome harassment; (3) a causal nexus between the harassment and his membership in the protected group; (4) that the harassment affected a term, condition, or privilege of employment; and (5) that the employer knew or should have known of the harassment and failed to take prompt and effective remedial action.  *Anda v. Wickes Furniture Co., Inc.*, 517 F.3d 526, *531-32 (8th Cir. 2008); *Green*, 459 F.3d at *910; *Turner v. Gonzales*, 421 F.3d 688, *695 (8th Cir. 2005).  The underlying wrongful conduct must be sufficient to create a hostile environment, both as it would be viewed objectively by a reasonable person ad as it was actually viewed subjectively by

8

the victim.  *Green*, 459 F.3d at \*911; *Turner*, 421 F.3d at \*695.  A working environment dominated by racial slurs constitutes a hostile work environment.  *See Green*, 459 F.3d at \*911.  If the comments are sporadic or casual, they are unlikely to establish a hostile work environment claim. *Id*.  Frequency of harassment is a factor, but even infrequent conduct can be severe enough to be actionable.  *Id*.

While employed at FCG, Steverson was subjected to being cursed at by not only his supervisors but also by his white coworkers.  Specifically, during a confrontation with Tony Cummings over a remark Steverson allegedly made, Cummings said to Steverson that he was "tired of [his] ass" and that he was ready to "send [his] ass out the door." [depo pp. 9-10] There is also the fact that Rice cursed at Steverson during the October 2006 incident involving Patricia Dance, where Rice told Steverson to "shut the fuck up."   [depo p. 32] During the incident, he was also subjected to Dance calling him a "black bastard" and "black mother fucker."  [depo p. 32] Steverson was also called a "black bastard" by Marie Cummings. [depo p. 30]  Steverson also overheard, Jason the cigarette room supervisor state every morning "that black folks are always late; and so you need to come in an hour early." [depo pp. 13-14] A similar statement was also made to Donny Pierson, a former stocker at FCG. [Pierson affidavit ¶ 14]

Although there is an argument that these statements could be taken as racially neutral, when coupled with the fact that while climbing a shelf to retrieve a box of candy, a white coworker named Ruby yelled "climb monkey, climb" at Steverson and that Steverson also heard her call Keith Firth a "monkey" while climbing a shelf to retrieve merchandise, [depo p. 30] an inference arises that a hostile environment existed.  The term "monkey" and other similar words have been found to be actionable in racial harassment claims across the country.  *Green*, 459 F.3d at \*911.  Primate rhetoric

has been used to intimidate African-Americans and monkey imagery has been significant in racial harassment in other context.  *Id*.

Here, there were two uses of the word "monkey."  In *Green*, there were eight alleged instances in a three month time frame where a white coworker used the term towards an African-American coworker.  It was found that the eight times were sufficient to form a hostile environment. Thus, when the two times here are aggregated with the so called racially neutral statements, an inference arises that hostile environment existed.  Therefore, the court finds that a genuine issue of material fact exists and that the Defendants' motion for summary judgment should also be denied in regards to Steverson's hostile environment claim.

C.      Individual Immunity under 42 U.S. C. § 1981

There are no Eighth Circuit Court of Appeal decisions addressing individual liability on claims under section 1981.  *See Habben v. City of Fort Dodge*, 472 F.Supp.2d 1142, *1155 (N.D. Iowa 2007); *Payne v. Peter Kiewit Sons', Inc.*, No. 8:06CV686 (D. Neb. Apr. 5, 2007) (order).  An individual may be held liable under section 1981, regardless of whether that individual's employer is subject to liability.  *Brooks v. Linn Mar Cmty. Sch. Dist.*, No. C95-0395 (N.D. Iowa July 1, 1997). If individuals are personally involved in the discrimination against a plaintiff, and if they intentionally caused an employer to infringe on a plaintiff's section 1981 rights, or if they authorized, directed, or participated in the alleged discriminatory conduct, they may be held liable.  *Id*.

Defendants argue that defendants David and Allen Cohn cannot be held individually liable under section 1981.  The court agrees.  Steverson admits that the Cohns never spoke to him in a derogatory manner. [undisputed facts ¶ 18]     Steverson fails to put forth any evidence showing that Allen and David Cohn personally discriminated against him.  Therefore liability against them under

10

section 1981 cannot be established and Defendants are entitled to summary judgment.

*IV.  CONCLUSION*

After viewing the evidence in a light most favorable to Steverson, the court finds that Defendants David and Allen Cohn cannot be held individually liable under 42 U.S.C. § 1981 and therefore grants Defendants' motion summary judgment on that point.  For this reason, Steverson's 42 U.S.C. § 1981 claim is dismissed with prejudice.  The court, however, finds that there are genuine issues of material fact in dispute as to Steverson's wrongful termination and hostile work environment claims.  Accordingly, summary judgment is denied as to these two claims.

IT IS SO ORDERED this 23rd day of June, 2008.

UNITED STATES DISTRICT JUDGE