IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

WASHINGTON LAMONT JONES, et al.                    PLAINTIFFS

v.                    CASE NO.: 4:06cv00944 BSM

FORREST CITY GROCERY INC., et al.                    DEFENDANTS


ORDER

Pending before this court is Defendants' Motion for Summary Judgment on the Claims of

Cara Lattimore, Eric George, Isouma Shine, Vanessa Isom, and Charles Rogers [Doc. # 197] and

Plaintiffs' response [Doc. # 238].  This is the fifth of fourteen pending motions for summary

judgment in this case.  For the reasons stated below, summary judgment is granted on all of the

claims of Lattimore, George, Shine and Rogers and on all of the claims of Isom, except for Isom's

wrongful termination claim.

*I. BACKGROUND*

Defendant Forrest City Grocery (FCG) is a grocery wholesaler located in Forrest City,

Arkansas, that delivers bulk goods to retailers in Arkansas, Mississippi, Tennessee, and Missouri.

FCG is owned and operated by Allen and David Cohn. Tony Cummings is FCG's warehouse

manager FCG employs roughly 200 employees, of which 148 are African-American.  FCG's

workforce includes thirteen supervisor of which seven are African-American.

On August 8, 2006, nine former FCG employees filed suit pursuant to 42 U.S.C. § 1981,

alleging that FCG and its agents engaged in racially hostile practices and procedures, subjected

African-American employees to a racially hostile work environment, and engaged in racially biased

hiring procedures.  They also sought class action certification pursuant to Rule 23 of the Federal

Rules of Civil Procedure.  The nine original plaintiffs are: Patrick Spearman, Kip Rucker, Will Green, Sidney Parchman, Charles Rogers, Washington Lamont Jones, William Ware, Michael Ward, and Lamar Cole.  Through a series of amended complaints, sixteen additional plaintiffs were added: Eric George, Brandon Barrett, Eric Brandon, Lester Brooks, Cara Lattimore, Gregory Moore, Isouma Shine, Lee Dillard, Jason Boyd, Vanessa Isom, Jimmie Kidd, Robert Glasper, Eric Foster, Tommy Howard, Patrick Stevenson, and Clyde Givans.  The Plaintiffs are all African-American.  In a June 12, 2007 order, it was found that the Plaintiffs were not entitled to class certification.  On May 21, 2008, upon Defendants' motion, Plaintiffs Clyde Givans and Gregory Moore were dismissed.

Defendants have moved for summary judgment on the claims of Plaintiffs Cara Lattimore, Eric George, Isouma Shine, Vanessa Isom,  and Charles Rogers.  The plaintiffs's claims include a discriminatory pattern and practice claim.  The plaintiffs' pattern and practice claims were dismissed in a June 9, 2008 order that granted the defendants' partial motion for summary judgment.  Their remaining claims will be addressed below.

## II.  STANDARD FOR SUMMARY JUDGMENT

When considering motions for summary judgment, this court views the evidence in a light most favorable to the nonmoving party and gives that party the benefit of all inferences that might reasonably be drawn.  *See Buboltz v. Residential Advantages, Inc.*, 523 F.3d 864, *868 (8th Cir. 2008).  Federal Rule of Civil Procedure 56(c) provides that summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.  *See Carrington v. City of Des Moines, Iowa*, 481 F.3d 1046, *1050 (8th Cir. 2007).  To be a genuine issue of fact, the evidence must be such that a reasonable jury could return a verdict for the

nonmoving party. *Depositors Ins. Co. v. Wal-Mart Stores, Inc.*, 506 F.3d 1092, *1094 (8th Cir. 2007).  To be a material fact, the factual issue must potentially affect the outcome of the suit under the governing law. *Id*.

The burden on the party moving for summary judgment is only to demonstrate to the District Court that the record does not disclose a genuine dispute on a material fact. *City of Mt. Pleasant, Iowa v. Associated Elec. Coop., Inc.*, 838 F.2d 268, *273 (8th Cir. 1988) (discussing *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548 (1986)).  It is enough for the movant to bring up the fact that the record does not contain such an issue and to identify that part of the record which bears out the movant's assertion. *Id*.  Once the movant has carried its burden under Rule 56(c), the nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, *587 (1986).  In the language of the Rule, the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial. *Id*.  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. *Id*.

### III.  DISCUSSION

A.    <u>Claims of Cara Lattimore</u>

The record before the court indicates that all of Lattimore's claims are  baseless and should not have been filed.  Even if Lattimore persisted in having her claims filed along with the other plaintiffs, her claims probably should have been voluntarily dismissed once discovery was completed.

Cara Lattimore was hired as a stocker in March 2005. [undisputed facts ¶ ¶ 1 & 3] Her position required the use of a forklift. [Lattimore dep. p. 25] Her immediate supervisor was a white

man named John Wayne. [undisputed facts ¶ 6; Lattimore dep. p. 21] On Lattimore's first day, John Wayne had a black stocker named Scotty show Lattimore what to do. [Lattimore dep. p. 21] Scotty used a forklift to unload products from the trucks and bring them to Lattimore, so she could restock her shelves. [undisputed facts ¶ 4; Lattimore dep. p. 22] After her first week, John Wayne told Lattimore that she would have to learn how to use a forklift. [Lattimore dep. p. 25] Lattimore asked Scotty to show her how to use a forklift. [Lattimore dep. p. 27] Lattimore does not drive and had difficulty learning how to use the forklift. [Lattimore dep. p. 27] On March 30, 2005, she was attempting to use a forklift to get supplies for her shelves when John Wayne said to her, "You're either going to get it today or I'm going to drop a bomb on you." [Lattimore dep. p. 31] Later, as she was clocking out at the end of her shift, John Wayne told her she was no longer needed. [Lattimore dep. p. 32] Lattimore now claims that (1) she was wrongfully terminated; (2) she was subjected to a racially hostile working environment; and (3) failure to hire/promote. [Fourth Amended Complaint, Count XII]

   1. <u>Wrongful Termination</u>

   A plaintiff raising claims of race discrimination may survive a motion for summary judgment either by proof of "direct evidence" of discrimination, or by creating the requisite inference of unlawful discrimination through the burden-shifting framework described in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04, 93 S.Ct. 1817 (1973). *E.E.O.C. v. Trans State Airlines, Inc.*, 462 F.3d 987, *991 (8th Cir. 2006); *see Fields v. Shelter Mut. Ins. Co.*, __ F.3d __, 2008 WL 763017 (8th Cir. 2008); *King v. Hardesty*, 517 F.3d 1049, *1057 (8th Cir. 2008).   Direct evidence is evidence showing a specific link between the alleged discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion

4

actually motivated the adverse employment action. *Libel v. Adventure Lands of Am., Inc.*, 482 F.3d 1028, *1034 (8th Cir. 2007); *Twymon v. Wells Fargo & Co.*, 462 F.3d 925, *933 (8th Cir. 2006). Direct evidence does not include stray remarks in the workplace, statements by non-decision-makers, or statements by decision-makers unrelated to the decisional process itself. *Twymon*, 462 F.3d at *933; *King*, 517 F.3d at *1058.

Lattimore believes that the demand that she learn to operate a forklift was racially motivated. [contested facts ¶ 3] She admits, however, that both male and female stockers, as well as, black and white stockers used the forklifts. [undisputed facts ¶ 6; Lattimore dep. p. 25] Although she was embarrassed and humiliated by John Wayne's comment about "[dropping] a bomb on [her]," she states that she did not find the comment racially discriminatory. [Lattimore dep. pp. 31, 36]

First, it is well-settled, that a plaintiff's beliefs or feelings cannot create a triable issue of discrimination. *Harris v. Home Savings Ass'n*, 730 F.Supp. 298, *304 (W.D. Mo. 1989). Second, after viewing the evidence in a light most favorable to Lattimore, the court finds that she fails to proffer direct evidence of discrimination. She fails to proffer evidence of discriminatory animus, therefore, a reasonable fact finder would not find that an illegitimate criterion motivated the decision to terminate Lattimore.

In light of the absence of direct evidence, to survive the present motion for summary judgment, Lattimore must establish a prima facie case of discrimination under the burden-shifting framework of *McDonnell-Douglas*. The *McDonnell-Douglas* burden-shifting framework applies to claims of race discrimination under section 1981. *Gordon v. Shafer Contracting Co., Inc.*, 469 F.3d 1191, *1196 (8th Cir. 2006); *Harris v. Hays*, 452 F.3d 714, *717 (8th Cir. 2006). Under this framework, a plaintiff first must establish a prima facie case of discrimination; if a prima facie case

5

is established, the burden of production shifts to the defendant to show a legitimate, nondiscriminatory reason for the challenged action; and if the defendant proffers such a reason, the burden shift back to the plaintiff to establish that the proffered reason is a mere pretext for discriminatory animus.  *Harris*, 452 F.3d at *717-18.   To establish a prima facie case of discriminatory discharge, Lattimore  must show that: (1) she belongs to a protected class; (2) she was meeting FCG's legitimate job expectations; (3) she suffered an adverse employment action; and (4) similarly situated employees outside the protected class were treated differently.  *Fields*, __ F.3d at __; *Shanklin v. Fitzgerald*, 397 F.3d 596, *602 (8th Cir. 2005).

Lattimore belongs to a protected class and suffered an adverse employment action. Lattimore, however, was not meeting FCG's legitimate job expectations because she was unable to operate a forklift and operating a forklift was a necessary part of her employment.  Lattimore has also failed to show that similarly situated employees were treated differently.  To establish that a similarly-situated employee received more favorable treatment, the evidence must show that the similarly-situated employee dealt with the same supervisor, was subject to the same standards, and engaged in the same conduct without any mitigating or distinguishing circumstances.  *E.E.O.C. v. Trans-State Airlines*, 462 F.3d at *993; *Green v. Franklin Nat'l Bank of Minneapolis*, 459 F.3d 903, *913 (8th Cir. 2006). Lattimore admits that both black and  white stockers used the forklifts. Moreover, she fails to offer any evidence that FCG retained white employee who could not operate a forklift.

The court finds that Lattimore was not meeting FCG's legitimate job expectations and that there is no evidence showing that similarly situated white employees were treated differently.  There is simply no evidence, either direct or indirect, of discrimination.  For these reasons, the court finds

that there are no genuine issues of material fact and grants summary judgment to Defendants on Lattimore's claim for wrongful termination.

2.  Hostile Work Environment

A hostile environment exists when the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment. *Gordon v. Shafer Contracting Co., Inc*., 469 F.3d 1191, *1194 (8th Cir. 2006).   To establish a prima facie hostile work environment claim, a plaintiff must prove: (1) that she is a member of a protected group; (2) the occurrence of unwelcome harassment; (3) a causal nexus between the harassment and his membership in the protected group; (4) that the harassment affected a term, condition, or privilege of employment; and (5) that the employer knew or should have known of the harassment and failed to take prompt and effective remedial action. *Anda v. Wickes Furniture Co., Inc.*, 517 F.3d 526, *531-32 (8th Cir. 2008); *Green*, 459 F.3d at *910; *Turner v. Gonzales*, 421 F.3d 688, *695 (8th Cir. 2005).  The underlying wrongful conduct must be sufficient to create a hostile environment, both as it would be viewed objectively by a reasonable person and as it was actually viewed subjectively by the victim. *Green*, 459 F.3d at *911; *Turner*, 421 F.3d at *695.  A working environment dominated by racial slurs constitutes a hostile work environment.  *See Green*, 459 F.3d at *911.  If the comments are sporadic or casual, they are unlikely to establish a hostile work environment claim. *Id*.  Frequency of harassment is a factor, but even infrequent conduct can be severe enough to be actionable.  *Id*.

Lattimore admits that, during the two weeks that she worked at FCG, she never heard anyone make a racial remark. [undisputed facts ¶ 14; Lattimore dep. p. 35] She also admits that she never

7

observed any conduct that she perceived as being racially discriminatory. [undisputed facts ¶ 16] Therefore, the court finds that Lattimore cannot establish that she was subjected to a racially hostile work environment and summary judgment is granted to Defendants on this claim.

    3.  <u>Failure to Promote/Hire</u>

      To establish a prima facie case of racial discrimination in a failure to hire/promote claim, a plaintiff must show: (1) she is a member of a protected group; (2) she was qualified and applied for a promotion to an available position; (3) she was rejected; and (4) similarly situated employees, not part of the protected group were promoted instead. *Allen v. Tobacco Superstore, Inc.*, 475 F.3d 931, *937 (8th Cir. 2007); *Pope v. ESA Servs., Inc.*, 406 F.3d 1001, *1007 (8th Cir. 2005).  To establish a prima facie failure to promote claim, a plaintiff ordinarily must show he or she applied for the promotion and was rejected or that he or she made every reasonable attempt to convey his or her interest in the job to the employer.  *McClure v. Career Sys. Dev. Corp.*, 447 F.3d 1133, *1135 (8th Cir.  2006); *Allen*, 475 F.3d at *937.  If a prima facie case is established, the burden of production shifts to the employer, who must rebut the presumption of discrimination with evidence that the plaintiff was rejected, or someone else was preferred, for a legitimate, nondiscriminatory reason. *Allen*, 475 F.3d at *937.  A plaintiff may nonetheless prevail by presenting credible evidence that the employer's stated reasons are pretextual.  *Id*.

      Lattimore's previous work experience includes working on a sanitation crew and working in a meat processing plant. [Lattimore dep.  pp. 9, 14] When she applied for employment with FCG, she listed on her application that she was applying for any available position. [Lattimore dep. p. 19] She has failed to show that she was qualified for a position in FCG's office or that there was a position available.  Because of this lack of proof, Lattimore cannot maintain her failure to

hire/promote claim.  Consequently, there are no genuine issues of material fact in dispute and summary judgment is granted to Defendants.

    4.  <u>Individual Immunity under 42 U.S.C. § 1981</u>

There are no Eighth Circuit Court of Appeal decisions addressing individual liability on claims under section 1981.  *See Habben v. City of Fort Dodge*, 472 F.Supp.2d 1142, *1155 (N.D. Iowa 2007); *Payne v. Peter Kiewit Sons', Inc.*, No. 8:06CV686 (D. Neb. Apr. 5, 2007) (order).  An individual may be held liable under section 1981, regardless of whether that individual's employer is subject to liability.  *Brooks v. Linn Mar Cmty. Sch. Dist.*, No. C95-0395 (N.D. Iowa July 1, 1997). If individuals are personally involved in the discrimination against a plaintiff, and if they intentionally caused an employer to infringe on a plaintiff's section 1981 rights, or if they authorized, directed, or participated in the alleged discriminatory conduct, they may be held liable.  *Id*.

Defendants argue that defendants Allen and David Cohn cannot be held individually liable under 42 U.S.C. §1981. Lattimore never saw or spoke to Allen or David Cohn. [Lattimore dep. p. 26] Therefore, she cannot establish that either Allen or David Cohn personally discriminated against her and the Cohns cannot be held individually liable under section 1981.  The court finds that there are no genuine issues of material fact in dispute and grants summary judgment to Defendants.

B.     <u>Claims of Eric George</u>

Eric George was first hired as a stocker in 1999. [undisputed facts ¶ 1; George dep. pp. 11-12] He quit after a few weeks. [undisputed facts ¶ 2] He was rehired by Tony Cummings on August 1, 2006. [undisputed facts ¶ 4; contested facts ¶ 1] Cummings fired George two weeks later when George provided false documentation for an absence from work. [undisputed facts ¶ 5]  George now claims that his termination was racially motivated, that FCG failed to hire/promote him, and that he

worked in a racially hostile work environment. [Fourth Amended Complaint, Count XIII]

1. <u>Wrongful Termination</u>

In order to survive the present motion for summary judgment, George needs to proffer either "direct evidence" of discrimination, or by creating the requisite inference of unlawful discrimination through the burden-shifting framework described in *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792, 802-04, 93 S.Ct. 1817 (1973). *E.E.O.C. v. Trans-State Airlines*, 462 F.3d at *991; *see Fields,* _ F.3d at __; *King,* 517 F.3d at*1057. Direct evidence is evidence showing a specific link between the alleged discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated the adverse employment action. *Libel*, 482 F.3d at *1034; *Twymon*, 462 F.3d at *933. Direct evidence does not include stray remarks in the workplace, statements by non-decision-makers, or statements by decision-makers unrelated to the decisional process itself. *Twymon*, 462 F.3d at *933; *King*, 517 F.3d at *1058.

George states that he quit in 1999 because he did not believe that he was treated fairly and because he felt that "there was some prejudice going around." [George dep. p. 21] First, this claim is barred by the four year statute of limitations. *See Jackson v. Homechoice, Inc.*, 368 F.3d 997, *999 (8th Cir. 2004). Second, it is well settled, that a plaintiff's beliefs or feelings cannot create a triable issue of discrimination. *Harris*, 730 F.Supp. at *304.

As to his 2006 termination, George believes that Cummings and Allen Cohn "could not stand black people." [George dep. pp. 29-30] He said that they looked at him like they hated him and that Allen Cohn once talked badly to him when he asked to borrow one hundred dollars. [George dep. pp. 30-31] He also states that Cummings cursed him twice. [George dep. p. 5] As stated above, a plaintiff's beliefs or feelings cannot create a triable issue of discrimination. *Harris*, 730 F.Supp. at

*304.

George has failed to proffer direct evidence of discrimination, so his claim will be examined under the burden-shifting framework of *McDonnell-Douglas*. The *McDonnell-Douglas* burden-shifting framework applies to claims of race discrimination under section 1981. *Gordon v. Shafer Contracting Co., Inc.*, 469 F.3d at *1196; *Harris*, 452 F.3d at *717. Under this framework, a plaintiff first must establish a prima facie case of discrimination; if a prima facie case is established, the burden of production shifts to the defendant to show a legitimate, nondiscriminatory reason for the challenged action; and if the defendant proffers such a reason, the burden shift back to the plaintiff to establish that the proffered reason is a mere pretext for discriminatory animus. *Harris*, 452 F.3d at *717-18. To establish a prima facie case of discriminatory discharge, George  must show that: (1) he belongs to a protected class; (2) he was meeting FCG's legitimate job expectations; (3) he suffered an adverse employment action; and (4) similarly situated employees outside the protected class were treated differently. *Fields*, __ F.3d at __; *Shanklin*, 397 F.3d at *602.

George has failed to establish a prima facie case of discrimination. First, Defendants are entitled to a presumption that race was not a motivating factor in the decision to terminate George. Under the same actor defense, when the hirer and firer are the same individual and the termination of employment occurs within a relatively short time span following the hiring, a strong inference exists that discrimination was not a determining factor for the adverse action. *Richardson v. Sugg*, 325 F.Supp.2d 919, *924 (E.D. Ark. 2004). Here, because Tony Cummings both hired and fired George  a presumption arises that race was not the motivating factor in the decision to terminate him.

More importantly, George cannot meet his burden of showing that similarly situated employees were treated differently. To establish that a similarly-situated employee received more

favorable treatment, the evidence must show that the similarly-situated employee dealt with the same supervisor, was subject to the same standards, and engaged in the same conduct without any mitigating or distinguishing circumstances. *E.E.O.C. v. Trans-State Airlines*, 462 F.3d at \*993; *Green*, 459 F.3d at \*913.

George proffers evidence that two white females would sneak and smoke in the bathroom and that nothing was done to the women. [George dep. pp. 9, 41] He states that when African-American employees were caught smoking, they were treated bad. [George dep. p. 41] This evidence falls short of showing that similarly situated employees were treated differently. George needs to show that similarly situated employees who provided false documentation for an absence were not terminated. In the absence of such evidence, George cannot show that similarly situated employees were treated differently and cannot establish a prima facie case of discrimination.

The court finds that there are no genuine issues of material fact in dispute. George has failed to proffer either direct evidence of discrimination or evidence creating an inference of discrimination. Summary judgment is therefore granted to Defendants on George's wrongful termination claim.

2. Failure to Promote/Hire

To establish a prima facie case of racial discrimination in a failure to hire/promote claim, a plaintiff must show: (1) he is a member of a protected group; (2) he was qualified and applied for a promotion to an available position; (3) he was rejected; and (4) similarly situated employees, not part of the protected group were promoted instead. *Allen*, 475 F.3d at \*937; *Pope,* 406 F.3d at \*1007. To establish a prima facie failure to promote claim, a plaintiff ordinarily must show he or she applied for the promotion and was rejected or that he or she made every reasonable attempt to

convey his or her interest in the job to the employer. *McClure*, 447 F.3d at *1135; *Allen*, 475 F.3d at *937. If a prima facie case is established, the burden of production shifts to the employer, who must rebut the presumption of discrimination with evidence that the plaintiff was rejected, or someone else was preferred, for a legitimate, nondiscriminatory reason. *Allen*, 475 F.3d at *937. A plaintiff may nonetheless prevail by presenting credible evidence that the employer's stated reasons are pretextual. *Id.*

George states that he possess no office skills. [George dep. p. 50] He also states that he never indicated that he wanted to work in the office. [George dep. P. 50] Because George fails to demonstrate that he was qualified for and applied for a position in FCG's office, he cannot establish a prima facie case of failure to hire/promote. Summary judgment is therefore granted to Defendants.

### 3. Hostile Work Environment

A hostile environment exists when the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment. *Gordon*, 469 F.3d at *1194. To establish a prima facie hostile work environment claim, a plaintiff must prove: (1) that he is a member of a protected group; (2) the occurrence of unwelcome harassment; (3) a causal nexus between the harassment and his membership in the protected group; (4) that the harassment affected a term, condition, or privilege of employment; and (5) that the employer knew or should have known of the harassment and failed to take prompt and effective remedial action. *Anda*, 517 F.3d at *531-32; *Green*, 459 F.3d at *910; *Turner*, 421 F.3d at *695. The underlying wrongful conduct must be sufficient to create a hostile environment, both as it would be viewed objectively by a reasonable person and as it was actually viewed subjectively by the victim. *Green*, 459 F.3d at *911; *Turner*,

13

421 F.3d at *695.  A working environment dominated by racial slurs constitutes a hostile work environment.  *See Green*, 459 F.3d at *911.  If the comments are sporadic or casual, they are unlikely to establish a hostile work environment claim.  *Id.*  Frequency of harassment is a factor, but even infrequent conduct can be severe enough to be actionable.  *Id.*

George fails to proffer any evidence remotely suggesting that the atmosphere at FCG was racially hostile.  Therefore, the court finds that are no genuine issues of material fact in dispute and summary judgment is granted to Defendants on this claim.

4.  <u>Individual Immunity under 42 U.S.C. § 1981</u>

There are no Eighth Circuit Court of Appeal decisions addressing individual liability on claims under section 1981.  *See Habben*, 472 F.Supp.2d at *1155; *Payne v. Peter Kiewit Sons', Inc.*, No. 8:06CV686 (D. Neb. Apr. 5, 2007) (order).  An individual may be held liable under section 1981, regardless of whether that individual's employer is subject to liability.  *Brooks v. Linn Mar Cmty. Sch. Dist.*, No. C95-0395 (N.D. Iowa July 1, 1997).  If individuals are personally involved in the discrimination against a plaintiff, and if they intentionally caused an employer to infringe on a plaintiff's section 1981 rights, or if they authorized, directed, or participated in the alleged discriminatory conduct, they may be held liable.  *Id.*

Defendants argue that defendants Allen and David Cohn cannot be held individually liable under 42 U.S.C. §1981. George never saw David Cohn. [George dep. p. 34] In support of his claim George merely testified that he thinks that Allen Cohn could not "stand" black people. [undisputed facts ¶ 8; George dep. p. 29]   As provided above, a plaintiff's beliefs or feelings cannot create a triable issue of discrimination.  *Harris*, 730 F.Supp. at *304.  The court therefore finds that George has failed to proffer evidence that Allen and David Cohn personally discriminated against him.

14

There are no genuine issues of material fact in dispute and summary judgment is granted to Defendants.

C.     Claims of Isouma Shine

Isouma Shine began working as a helper on October 1, 2005. [contested facts ¶ 1; Shine dep. p. 13] On or about November 30, 2005, he was checking his aisle at the end of his shift, when he noticed that a pallet was crooked. [undisputed facts ¶ 6; Shine dep. p. 24] Shine tried, but was unable, to straighten the pallet with a pallet jack. [Shine dep. p. 24] He determined that something was preventing the jack from getting to the pallet and he got off the jack to investigate. [undisputed facts ¶ 6; Shine dep. p. 25] When he looked under the pallet, he discovered two ziplock bags full of cigarettes. [undisputed facts ¶ 6; Shine dep. p. 25] As he retrieved the bags from under the pallet, one of the bags spilled cigarettes onto the floor. [undisputed facts ¶ 6] Around that same time, a black coworker named "Edwin" was on a forklift at the end of the aisle. [Shine dep. p. 25] Shine told Edwin that he found the cigarettes under a pallet and he asked Edwin to serve as a witness. [undisputed facts ¶ 7; Shine dep. p. 25] Edwin offered to take the cigarettes to the office and Shine accepted his offer. [undisputed facts ¶ 7; Shine dep. p. 25]

The following morning, Tony Cummings called Shine into the office and asked him what had happened. [Shine dep. pp. 26-27] When Shine replied that he did not know, Cummings told him that someone saw him with a stick scooping cigarettes through the fence. [undisputed facts ¶ 8; Shine dep. p. 27] Shine denied the allegation. [Shine dep. p. 27] Cummings told Shine that an investigation would be conducted and that he was not to return to work until the investigation was complete. [undisputed facts ¶ 11; Shine dep. pp. 28-29] He was later terminated for suspected theft of cigarettes. [December 2, 2005 Incident Report] Shine now raises the following claims: wrongful

15

termination, failure to hire/promote, and hostile environment. [Fourth Amended Complaint, Count XIV]

1. <u>Wrongful Termination</u>

In order to survive the present motion for summary judgment, Shine needs to proffer either "direct evidence" of discrimination, or by creating the requisite inference of unlawful discrimination through the burden-shifting framework described in *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792, 802-04, 93 S.Ct. 1817 (1973). *E.E.O.C.*, 462 F.3d at *991 ; *see Fields*, __ F.3d at __; *King*, 517 F.3d at *1057. Direct evidence is evidence showing a specific link between the alleged discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated the adverse employment action. *Libel*, 482 F.3d at *1034; *Twymon*, 462 F.3d at *933. Direct evidence does not include stray remarks in the workplace, statements by non-decision-makers, or statements by decision-makers unrelated to the decisional process itself. *Twymon*, 462 F.3d at *933; *King*, 517 F.3d at *1058.

Although he never observed any racially discriminatory conduct, Shine now believes that his termination was racially motivated. [undisputed facts ¶ 16; contested facts ¶ 3] A plaintiff's beliefs or feelings will not create a triable issue of discrimination. *See Harris*, 730 F.Supp. at *304.

Shine does not proffer any direct evidence of discrimination, so his claim will be examined under the burden-shifting framework of *McDonnell-Douglas*. The *McDonnell-Douglas* burden-shifting framework applies to claims of race discrimination under section 1981. *Gordon*, 469 F.3d at *1196; *Harris*, 452 F.3d at *717. Under this framework, a plaintiff first must establish a prima facie case of discrimination; if a prima facie case is established, the burden of production shifts to the defendant to show a legitimate, nondiscriminatory reason for the challenged action; and if the

16

defendant proffers such a reason, the burden shift back to the plaintiff to establish that the proffered reason is a mere pretext for discriminatory animus. *Harris*, 452 F.3d at *717-18. To establish a prima facie case of discriminatory discharge, Shine must show that: (1) he belongs to a protected class; (2) he was meeting FCG's legitimate job expectations; (3) he suffered an adverse employment action; and (4) similarly situated employees outside the protected class were treated differently. *Fields*, __ F.3d at __; *Shanklin*, 397 F.3d at *602.

Shine cannot meet his burden of proving that similarly situated employees received different treatment, and he, therefore, fails to establish a prima facie case of discrimination. To establish that a similarly-situated employee received more favorable treatment, the evidence must show that the similarly-situated employee dealt with the same supervisor, was subject to the same standards, and engaged in the same conduct without any mitigating or distinguishing circumstances. *E.E.O.C. v. Trans-State Airlines*, 462 F.3d at *993; *Green*, 459 F.3d at *913.

Shine proffers no evidence demonstrating that similarly situated employees outside the protected class were treated differently and therefore cannot establish a prima facie case of discrimination. Not only has Shine presented no evidence that similarly situated white employees were treated differently, but he also states that he is unaware of any other African-American employees who were wrongfully accused of stealing. [Shine dep. p. 18]

Even if Shine could establish a prima facie case of discrimination, FCG offers a legitimate reason for his termination and he is unable to prove that FCG's stated reason is mere pretext for discriminatory animus. A plaintiff may make a sufficient showing of pretext by different means, including showing that an employer: (1) failed to follow its own policies; (2) treated similarly-situated employees in a disparate manner; and (3) made substantial changes over time in its proffered

reason for an employment decision. *Arnold v. Nursing & Rehab. Ctr. at Good Shepherd, LLC.*, 471 F.3d 843, *847 (8th Cir. 2006). Regardless of the method employed to prove pretext, a plaintiff must demonstrate that a discriminatory animus lies behind the defendants' neutral explanations. *Id.* Even if an employer fires an employee based upon a mistaken belief, the employee still must offer some evidence that racial animus was at the root of the termination. *Id.*

Shine was fired because he was suspected of stealing cigarettes. Shine denies the allegation; however, even if Shine were in fact innocent, he is still required to proffer proof that the stated reason for his termination was merely pretext for racial animus and he proffers no such evidence. For these reasons, the court finds that there are no genuine issues of material fact in dispute and Defendants are granted summary judgment.

2. Failure to Hire/Promote

To establish a prima facie case of racial discrimination in a failure to hire/promote claim, a plaintiff must show: (1) he is a member of a protected group; (2) he was qualified and applied for a promotion to an available position; (3) he was rejected; and (4) similarly situated employees, not part of the protected group were promoted instead. *Allen*, 475 F.3d at *937; *Pope*, 406 F.3d at *1007. To establish a prima facie failure to promote claim, a plaintiff ordinarily must show he or she applied for the promotion and was rejected or that he or she made every reasonable attempt to convey his or her interest in the job to the employer. *McClure*, 447 F.3d at *1135; *Allen*, 475 F.3d at *937. If a prima facie case is established, the burden of production shifts to the employer, who must rebut the presumption of discrimination with evidence that the plaintiff was rejected, or someone else was preferred, for a legitimate, nondiscriminatory reason. *Allen*, 475 F.3d at *937. A plaintiff may nonetheless prevail by presenting credible evidence that the employer's stated

18

reasons are pretextual.  *Id*.

Shine admits that he never applied for a job in FCG's office. [Shine dep. p. 23] Therefore, he cannot establish a prima facie case of failure to hire/promote and summary judgment is granted to Defendants on Shine's failure to hire/promote claim.

3.  Hostile Work Environment

A hostile environment exists when the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.  *Gordon*, 469 F.3d at *1194.  To establish a prima facie hostile work environment claim, a plaintiff must prove: (1) that he is a member of a protected group; (2) the occurrence of unwelcome harassment; (3) a causal nexus between the harassment and his membership in the protected group; (4) that the harassment affected a term, condition, or privilege of employment; and (5) that the employer knew or should have known of the harassment and failed to take prompt and effective remedial action.  *Anda*, 517 F.3d at *531-32;  *Green*, 459 F.3d at *910; *Turner*, 421 F.3d at *695.  The underlying wrongful conduct must be sufficient to create a hostile environment, both as it would be viewed objectively by a reasonable person and as it was actually viewed subjectively by the victim.  *Green*, 459 F.3d at *911; *Turner*, 421 F.3d at *695.  A working environment dominated by racial slurs constitutes a hostile work environment.  *See Green*, 459 F.3d at *911.  If the comments are sporadic or casual, they are unlikely to establish a hostile work environment claim.  *Id*.  Frequency of harassment is a factor, but even infrequent conduct can be severe enough to be actionable.  *Id*.

Shine admits that no one ever talked to him in a racially derogatory manner. [Shine dep. p. 32] Furthermore, he states that no one ever used racial slurs or racially charged language around him.

[undisputed facts ¶ 13] He also states that he never saw conduct that he perceived as being racially discriminatory.  [undisputed facts ¶ 16] After viewing this evidence in a light most favorable to Shine, the court finds that he fails to proffer evidence suggesting that he was subjected to a racially hostile work environment and that there are no genuine issues of material fact in dispute.  Therefore, summary judgment is granted to Defendants on Shine's claim of hostile environment.

4.  Individual Immunity under 42 U.S.C. § 1981

There are no Eighth Circuit Court of Appeal decisions addressing individual liability on claims under section 1981.  *See Habben*, 472 F.Supp.2d at *1155; *Payne v. Peter Kiewit Sons', Inc.*, No. 8:06CV686 (D. Neb. Apr. 5, 2007) (order).  An individual may be held liable under section 1981, regardless of whether that individual's employer is subject to liability.  *Brooks v. Linn Mar Cmty. Sch. Dist.*, No. C95-0395 (N.D. Iowa July 1, 1997).  If individuals are personally involved in the discrimination against a plaintiff, and if they intentionally caused an employer to infringe on a plaintiff's section 1981 rights, or if they authorized, directed, or participated in the alleged discriminatory conduct, they may be held liable.  *Id*.

Defendants argue that Defendants Allen and David Cohn cannot be held individually liable under 42 U.S.C. §1981.  Shine states that he does not know Allen and David Cohn [undisputed facts ¶ 14; Shine dep. p. 32] and has offered no evidence tending to prove his claims against the Cohns. He has therefore failed to establish that Allen and David Cohn discriminated against him and that they are individually liable under section 1981.  For these reasons, the court finds that there are no genuine issues of material fact in dispute and summary judgment is granted to Defendants.

D.  Claims of Vanessa Isom

Tony Cummings hired Vanessa Isom to work as a packer on December 11, 2006. [undisputed

20

facts ¶¶ 2 & 3; contested facts ¶ 1; Isom dep. p. 10] The position involves assembling orders and placing the orders on a pallet to be loaded onto a truck. [undisputed facts ¶ 3] On December 23, 2006, Isom was fired after Cummings saw her sitting down on the job. [contested facts ¶ 1] She now brings a wrongful termination claim and a failure to hire/promote claim. [Fourth Amended Complaint, Count XX]

    1. Wrongful Termination

    In order to survive the present motion for summary judgment, Isom needs to proffer either "direct evidence" of discrimination, or by creating the requisite inference of unlawful discrimination through the burden-shifting framework described in *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792, 802-04, 93 S.Ct. 1817 (1973). *E.E.O.C. v. Trans-State Airlines*, 462 F.3d at *991; *see Fields*, __ F.3d at __; *King*, 517 F.3d at *1057. Direct evidence is evidence showing a specific link between the alleged discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated the adverse employment action. *Libel*, 482 F.3d at *1034; *Twymon*, 462 F.3d at *933. Direct evidence does not include stray remarks in the workplace, statements by non-decision-makers, or statements by decision-makers unrelated to the decisional process itself. *Twymon*, 462 F.3d at *933; *King*, 517 F.3d at *1058.

    Isom fails to proffer any direct evidence of discrimination, so her claim will be analyzed under the burden-shifting framework of *McDonnell-Douglas*. The *McDonnell-Douglas* burden-shifting framework applies to claims of race discrimination under section 1981. *Gordon*, 469 F.3d at *1196; *Harris*, 452 F.3d at *717. Under this framework, a plaintiff first must establish a prima facie case of discrimination; if a prima facie case is established, the burden of production shifts to the defendant to show a legitimate, nondiscriminatory reason for the challenged action; and if the

defendant proffers such a reason, the burden shift back to the plaintiff to establish that the proffered reason is a mere pretext for discriminatory animus. *Harris*, 452 F.3d at *717-18. To establish a prima facie case of discriminatory discharge, Isom must show that: (1) she belongs to a protected class; (2) she was meeting FCG's legitimate job expectations; (3) she suffered an adverse employment action; and (4) similarly situated employees outside the protected class were treated differently. *Fields*, __ F.3d at __; *Shanklin*, 397 F.3d at *602.

Because Tony Cummings hired and fired Isom, a presumption arises that race was not a motivating factor in the decision to terminate Isom. *See Richardson*, 325 F.Supp. at *924. Furthermore, Isom fails to meet her burden of proving that similarly situated employees were treated differently. To establish that a similarly-situated employee received more favorable treatment, the evidence must show that the similarly-situated employee dealt with the same supervisor, was subject to the same standards, and engaged in the same conduct without any mitigating or distinguishing circumstances. *E.E.O.C. v. Trans-State Airlines*, 462 F.3d at *993; *Green v. Franklin Nat'l Bank of Minneapolis*, 459 F.3d 903, *913 (8th Cir. 2006).

Isom was fired because Cummings believed that she had been sitting down on the job for forty-five minutes. [contested facts ¶ 1] She admits that she was sitting down but disputes the duration of time that she was sitting. [Isom dep. p. 17] She states that, during her shift, she would often sit for five minutes. [Isom dep. p. 18] She proffers evidence that both black and white employees would sit around. [Isom dep. p. 18] Isom also states that she did not know that it was against FCG policy for employees to sit around. [undisputed facts ¶ 5] She alleges that, when Cummings saw white employees sitting around he would not say anything, but when African-American workers sat around, Cummings would order them back to work. [contested facts ¶ 5] Isom

22

also proffers that, on the same night that she was terminated, two white coworkers, Terri McKay and Jessica Chapman, loaded the wrong merchandise order onto a truck and only received a one day suspension. [contested facts ¶ 4]

After viewing this evidence in a light most favorable to Isom, the court finds that there is a genuine issue of material fact in dispute regarding whether white workers who sat down on the job were treated differently than black workers who sat down on the job. Although the evidence is razor thin and may have a very difficult time surviving at trial, the court cannot weigh the evidence at this phase of the litigation. Therefore, Defendants' motion for summary judgment on this issue is denied.

2. Failure to Hire/Promote

To establish a prima facie case of racial discrimination in a failure to promote claim, a plaintiff must show: (1) she is a member of a protected group; (2) she was qualified and applied for a promotion to an available position; (3) she was rejected; and (4) similarly situated employees, not part of the protected group were promoted instead. *Allen*, 475 F.3d at *937; *Pope*, 406 F.3d at *1007. To establish a prima facie failure to promote claim, a plaintiff ordinarily must show he or she applied for the promotion and was rejected or that he or she made every reasonable attempt to convey his or her interest in the job to the employer. *McClure*, 447 F.3d at *1135; *Allen*, 475 F.3d at *937. If a prima facie case is established, the burden of production shifts to the employer, who must rebut the presumption of discrimination with evidence that the plaintiff was rejected, or someone else was preferred, for a legitimate, nondiscriminatory reason. *Allen*, 475 F.3d at *937. A plaintiff may nonetheless prevail by presenting credible evidence that the employer's stated reasons are pretextual. *Id.*

Isom has failed to establish a prima facie case of failure to hire/promote. Indeed, Isom has

failed to demonstrate that she was qualified or that she applied for a position in FCG's office. This is the case because she not only stated that she never applied for a job in FCG's office, but she also stated that she is not a good typist. [Isom dep. p. 38] For these reasons, the court finds that there are no genuine issues of material fact in dispute and grants summary judgment to Defendants.

### 3.  Individual Immunity under 42 U.S.C. § 1981

There are no Eighth Circuit Court of Appeal decisions addressing individual liability on claims under section 1981. *See Habben*, 472 F.Supp.2d at *1155; *Payne v. Peter Kiewit Sons', Inc.*, No. 8:06CV686 (D. Neb. Apr. 5, 2007) (order). An individual may be held liable under section 1981, regardless of whether that individual's employer is subject to liability. *Brooks v. Linn Mar Cmty. Sch. Dist.*, No. C95-0395 (N.D. Iowa July 1, 1997). If individuals are personally involved in the discrimination against a plaintiff, and if they intentionally caused an employer to infringe on a plaintiff's section 1981 rights, or if they authorized, directed, or participated in the alleged discriminatory conduct, they may be held liable. *Id.*

Defendants argue that Defendants Allen and David Cohn cannot be held individually liable under 42 U.S.C. §1981. Isom states that she does not know Allen and David Cohn [Isom dep. p. 20] and has offered no evidence tending to prove her claims against the Cohns. She therefore cannot establish that Allen and David Cohn are individually liable under section 1981. For these reasons, there are no genuine issues of material fact in dispute and summary judgment is granted to Defendants.

### E.  Claims of Charles Rogers

Charles Rogers was first hired as a truck driver for FCG by Allen Cohn in 1999. [undisputed facts ¶¶ 2 & 3; Rogers dep. pp. 14-15] He quit after a couple of months. [undisputed facts ¶ 2;

Rogers dep. p. 16] On April 1, 2001, Allen Cohn rehired Rogers. [undisputed facts ¶ 3; Rogers dep. pp. 17-18] When he was rehired, he signed the list of rules FCG had for its truck drivers. [Rogers dep. p. 22] FCG's rules provide that drivers are responsible for their loads and for the security of their trucks.  [Rogers dep. p. 34] The rules also provide that drivers are subject to deductions for shortages. [Rogers dep.  p. 34] FCG also requires that its drivers check their inventory and make sure that it is accurate before leaving on their route. [undisputed facts ¶ 10]

On Friday, August 16, 2002, while making deliveries in Memphis, Rogers realized that his cigarette inventory was short. [undisputed facts ¶ 5] He called Allen Cohn to report the shortage and told Allen that he was going to recount his inventory. [contested facts ¶ 2] After recounting his inventory, he called Allen back, only to be told that Allen had left for the day. [contested facts ¶ 2] Rogers does not know the name of the person to whom he talked. [Rogers dep. p. 27] He told the person on the phone that he was bringing the truck back so the inventory could be recounted. [contested facts ¶ 2] When Rogers arrived back at FCG, he was told that Allen wanted him to lock the trailer and back it up to the dock.  [Rogers dep. p. 27] After securing the trailer, he went to get his paycheck only to be told that his paycheck was locked in Allen's office. [Rogers dep. p. 27]

That following Monday, when Rogers went to pick up his paycheck, Allen informed him that his services were no longer needed. [contested facts ¶ 3; Rogers dep. p. 28] It was discovered that Rogers's truck was short sixty-three cartons of cigarettes. [undisputed facts ¶ 7] The cigarettes had a value of $1,600. [undisputed facts ¶ 7] Rogers was later arrested and charged with theft. [Rogers dep. p. 30] Eventually, the charges were dismissed. [Rogers dep. p. 31] Rogers now claims that he was wrongfully terminated. [Fourth Amended Complaint, Count X]

1. <u>Wrongful Termination</u>

In order to survive the present motion for summary judgment, Rogers needs to proffer either "direct evidence" of discrimination, or by creating the requisite inference of unlawful discrimination through the burden-shifting framework described in *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792, 802-04, 93 S.Ct. 1817 (1973).  *E.E.O.C. v. Trans-State Airlines*, 462 F.3d at *991; *see Fields*, _ F.3d at __; *King*, 517 F.3d at *1057.  Direct evidence is evidence showing a specific link between the alleged discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated the adverse employment action.  *Libel*, 482 F.3d at*1034; *Twymon*, 462 F.3d at *933.  Direct evidence does not include stray remarks in the workplace, statements by non-decision-makers, or statements by decision-makers unrelated to the decisional process itself.  *Twymon*, 462 F.3d at *933; *King*, 517 F.3d at *1058.

Rogers believes that his race was the motivating factor in the decision to terminated him. [contested facts ¶ 4]  It is well-settled, that a plaintiff's beliefs or feelings cannot create a triable issue of discrimination.  *Harris*, 730 F.Supp. at *304.  The only evidence Rogers offers is his belief and without additional evidence, he fails to proffer direct evidence of discrimination.

Due to the absence of direct evidence of discrimination, Roger's claim will be examined under the burden-shifting framework of *McDonnell-Douglas*.  The *McDonnell-Douglas* burden-shifting framework applies to claims of race discrimination under section 1981.  *Gordon*, 469 F.3d at *1196; *Harris,* 452 F.3d at *717.  Under this framework, a plaintiff first must establish a prima facie case of discrimination; if a prima facie case is established, the burden of production shifts to the defendant to show a legitimate, nondiscriminatory reason for the challenged action; and if the defendant proffers such a reason, the burden shift back to the plaintiff to establish that the proffered reason is a mere pretext for discriminatory animus.  *Harris*, 452 F.3d at *717-18.  To establish a

prima facie case of discriminatory discharge, Rogers must show that: (1) he belongs to a protected class; (2) he was meeting FCG's legitimate job expectations; (3) he suffered an adverse employment action; and (4) similarly situated employees outside the protected class were treated differently. *Fields*, __ F.3d at __; *Shanklin*, 397 F.3d at *602.

Rogers fails to establish a prima facie case of discrimination. First, defendants are entitled to a presumption that race was not a motivating factor in the decision to terminate Rogers. Under the same actor defense, when the hirer and fire are the same individual and the termination of employment occurs within a relatively short time span following the hiring, a strong inference exists that discrimination was not a determining factor for the adverse action. *Richardson*, 325 F.Supp.2d at *924. Because Allen Cohn hired and fired Rogers, Defendants are entitled to a presumption that race was not the motivating factor in the decision to terminate Rogers.

Second, Rogers has failed to meet his burden of proving that similarly situated employees outside the protected class were treated differently. Rogers admits that shortages were deducted from the paychecks of both black and white drivers. [undisputed facts ¶¶ 18 & 19] Rogers also fails to identify any employee that had a similar shortage and who was not terminated. He, therefore, has not shown that similarly situated employees were treated differently and has failed to establish a prima facie case of discrimination.

Rogers has failed to produce direct evidence that his termination was discriminatory and has produced no evidence creating an inference of discrimination. Therefore a reasonable jury would not rule in his favor. For these reasons, the court finds that there are no genuine issues of material fact in dispute and grants summary judgment to Defendants on Rogers's wrongful termination claim.

2. <u>Individual Immunity under 42 U.S.C. § 1981</u>

There are no Eighth Circuit Court of Appeal decisions addressing individual liability on claims under section 1981. *See Habben*, 472 F.Supp.2d at *1155; *Payne v. Peter Kiewit Sons', Inc.*, No. 8:06CV686 (D. Neb. Apr. 5, 2007) (order).  An individual may be held liable under section 1981, regardless of whether that individual's employer is subject to liability. *Brooks v. Linn Mar Cmty. Sch. Dist.*, No. C95-0395 (N.D. Iowa July 1, 1997).  If individuals are personally involved in the discrimination against a plaintiff, and if they intentionally caused an employer to infringe on a plaintiff's section 1981 rights, or if they authorized, directed, or participated in the alleged discriminatory conduct, they may be held liable. *Id.*

Defendants argue that defendants Allen and David Cohn cannot be held individually liable under 42 U.S.C. §1981.  Rogers has offered no proof that either of the Cohns discriminated against him and does not believe that they had any personal animosity or resentment toward him. [undisputed facts ¶ 21] The court, therefore, finds that there are no genuine issues of material fact in dispute and grants summary judgment to Defendants.

## IV.  CONCLUSIONS

After viewing the evidence in a light most favorable to plaintiffs Lattimore, George, Shine, Isom, and Rogers, the court finds that there are genuine issues of material fact in dispute as to Isom's wrongful termination claim and denies summary judgment on that claim.  The court further finds that there are no genuine issues of material fact in dispute on the remainder of Isom's claims and on the claims of Lattimore, George, Shine and Rogers and grants summary judgment as to all of those claims.  All of the claims of Isom, except for the wrongful termination claim, and all of the claims of Lattimore, George, Shine and Rogers are dismissed with prejudice.

28

IT IS SO ORDERED this 26th day of June, 2008.

UNITED STATES DISTRICT JUDGE